# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| RICHARD WRIGHT, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:17-CV-70-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1] filed by Plaintiff Richard L. Wright on February 14, 2017, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 17] filed by Plaintiff on June 23, 2017. Plaintiff requests that the June 26, 2015 decision of the Administrative Law Judge denying his claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings or, alternatively, that an award of benefits be made. On July 24, 2017, the Commissioner filed a response, and Plaintiff filed a reply on August 22, 2017. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On March 13 2013, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability since April 2, 2012. Plaintiff later amended the alleged onset date to March 13, 2013. The applications were denied initially and on reconsideration. On May 27, 2015, Administrative Law Judge Brian Saame ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, and an impartial vocational expert. On June 26, 2015, the ALJ issued a written decision denying benefits, making the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since March 13, 2013, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, diabetes mellitus, chronic obstructive pulmonary disease, congestive heart failure, alcohol-induced liver damage, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with some additional limitations. More specifically, he is able to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently, stand or walk for a total of two hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. He is limited to no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, and he cannot climb ladders, ropes, or scaffolds. He can tolerate frequent exposure to extreme cold, wetness, vibration, fumes, odors, dusts, gases, and poor ventilation, but he cannot tolerate any exposure to hazards, such as moving machinery and unprotected heights. He needs the opportunity [to] alternate between sitting and standing at will while remaining on task, and he requires full-time use of a mobile oxygen tank.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1969] and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 13, 2013, through the date of this decision.

(AR 11-25).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an

ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [the] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

4

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks an award of benefits or, in the alternative, remand, arguing that the ALJ erred in assigning weight to the medical opinion evidence, in evaluating Plaintiff's subjective symptoms, in determining Plaintiff's RFC, and in interpreting the vocational expert's testimony.

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in affording only some weight to the medical opinion of Dr. Jay Joshi. Dr. Joshi opined that Plaintiff could lift, carry, push, and pull ten pounds or less with the right arm and no weight with the left arm; could sit for 30 minutes at one time for a total of five hours in a work day with breaks of 20 to 30 minutes needed after prolonged sitting; could stand and walk for 10 minutes at one time for a total of one hour in a work day with breaks of 20 to 30 minutes needed after prolonged standing or walking; could never bend, kneel, or squat; could not reach above the shoulder with his left arm; could occasionally perform fine finger manipulation and grasp with the left hand; had 10-15 pounds of grip strength in his right hand and 0-5 pounds of grip strength in his left hand; could not operate motorized vehicles or moving machinery and foot controls; and could work for four to five hours per day.

6

Dr. Joshi is Plaintiff's treating physician. Under what is known as the "treating physician rule," the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ does not give controlling weight to the opinion of a treating physician, he must weigh the opinion in accordance with the factors in 20 C.F.R. §§ 404.1527, 416.927. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion."); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2006). An ALJ must offer good reasons if he does not assign controlling weight to a treating physician's medical opinion. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016).

The ALJ gave Dr. Joshi's opinion "some weight to the extent that it is consistent with both the claimant's RFC and the evidence of record, which shows a history of treatment for chronic pain, fatigue, and breathing difficulty caused by degenerative disc disease, COPD, congestive heart failure, and diabetes." (AR 17). The ALJ also gave little weight to Dr. Joshi's opinion regarding Plaintiff's inability to work eight hours in a day, because the ultimate issue of disability is reserved for the Commissioner.

The ALJ failed to provide any reasoning as to why Dr. Joshi's opinion was not given more weight. To find the RFC first and to then assign weight to evidence only to the extent that the evidence is consistent with the RFC is to reverse the proper order. *Bjornson v. Astrue*, 671 F.3d 640,

645-46 (7th Cir. 2012). The Court could look beyond this boilerplate language if the ALJ provided reasons for rejecting specific portions of Dr. Joshi's opinion, such as Plaintiff's inability to bend, kneel, or squat or Plaintiff's limit of sitting only five hours in a work day. The opinion implies that the portions of Dr. Joshi's opinion that were not accepted are not consistent with the evidence of record, but the ALJ does not identify that evidence to enable the Court's review of the consistency. Evidence cited earlier in the decision, however, shows that some of the rejected portions of Dr. Joshi's opinion are consistent with evidence of record. The ALJ reported that Plaintiff was unable to stoop and squat at a consultative physical examination in April 2013, which is consistent with Dr. Joshi's opinion that Plaintiff cannot bend or squat. (AR 16).

The ALJ has not sufficiently articulated his analysis to permit the Court to trace his reasoning and be assured that he considered the important evidence in deciding to not give controlling weight to Dr. Joshi's opinion. Remand is required for a re-weighing of Dr. Joshi's opinion.

**B. Subjective Symptom Evaluation**

On March 28, 2016, Social Security Ruling (SSR) 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing his "credibility." However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's January 22, 2015 decision is governed by the standard of SSR 96-7p.

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20

8

C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quotation marks omitted) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). Though the case is already being remanded, a couple of the asserted errors in the ALJ's assessment of Plaintiff's credibility warrant discussion.

First, Plaintiff argues that the ALJ improperly inferred from Plaintiff's activities of daily living that Plaintiff is able to work full time. The Seventh Circuit Court of Appeals has noted that

there are "critical differences between activities of daily living and activities in a full-time job," including "that a person has more flexibility in scheduling the former than the latter," and, in performing activities of daily living, a person "is not held to a minimum standard of performance, as [he] would be by an employer." *Bjornson*, 671 F.3d at 647. The ALJ, without citation to evidence in the record, found that Plaintiff "is able to perform a considerable number of activities of daily living, including independently maintaining his personal hygiene, preparing meals, cleaning, doing laundry, shopping in stores, managing his finances, and using a computer." (AR 18). The ALJ noted that these activities are not conclusive proof of an ability to work full time but must be considered "especially in light of his complaints of disabling pain, fatigue, and problems with memory, concentration, and social functioning—and it weighs against the credibility of his allegations." *Id.* Plaintiff presented evidence—ignored by the ALJ—that shows limitations to the ability to perform the tasks listed. For example, Plaintiff needs help getting in and out of the bathtub, *id.* at 241, and cannot bend down far enough to put laundry in the clothes dryer, *id.* at 242, and Plaintiff's girlfriend performs household chores and grocery shopping, *id.* at 47. Further, the ALJ has not explained how Plaintiff's stated limited ability to perform the tasks listed is inconsistent with Plaintiff's allegations of pain and fatigue. The ALJ has not provided a sufficient explanation of his reasoning to discount Plaintiff's credibility due to his activities of daily living.

Second, the ALJ found that Plaintiff's treatment "has been essentially routine and conservative in nature." *Id.* at 18. The ALJ is allowed to consider whether treatment is conservative. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). However, ALJs are not permitted to draw adverse inferences about treatment *without first* properly assessing the underlying reasons for the course of treatment, such as inability to pay. *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). The law on the

issue is clear—an ALJ must inquire into the reason behind conservative treatment before drawing a negative inference on that basis. *See id.* (citing *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014); SSR 96-7p, 1996 WL 374186, at *7). Further, the ALJ should cite medical evidence regarding what kind of treatment would be appropriate. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001)). Here, the ALJ erred by neither inquiring of Plaintiff why he has not undergone more aggressive treatment nor citing medical evidence indicating what treatment would be appropriate if Plaintiff's symptoms are as severe as alleged.

### C. RFC Determination

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a) 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184 at *7.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes

medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.*

Given the errors noted above in assessing the medical opinion of Dr. Joshi and in evaluating Plaintiff's allegations of his subjective symptoms, the ALJ's RFC finding cannot stand. Many of Plaintiff's contentions of error in the RFC finding are connected to the ALJ's decisions to not give higher weight to Dr. Joshi's opinion and to discount Plaintiff's credibility. After correcting the noted errors, the probability of changes being made to Plaintiff's RFC on remand is high. Accordingly, an in-depth analysis of Plaintiff's myriad of asserted errors in the RFC determination are not warranted here in light of the previously shown basis for remand.

### D. Vocational Expert Testimony

The vocational expert ("VE") opined that a hypothetical individual with Plaintiff's RFC except for the full-time use of a mobile oxygen tank would be able to work as a document preparer (1,000 jobs in Indiana; 30,000 jobs nationally), telephone information clerk (1,500 jobs in Indiana; 60,000 jobs nationally), and food and beverage order clerk (1,000 jobs in Indiana, 30,000 jobs nationally). When asked how the use of the mobile oxygen tank would affect the availability of the jobs, the VE testified that, in his experience, the number of jobs available would "drop 70%." (AR 64).

When the ALJ relayed this information in his decision, however, he reported that the VE testified that Plaintiff had the following job numbers available: document preparer (300 jobs in Indiana; 9,000 jobs nationally); telephone information clerk (1,500 jobs in Indiana; 60,000 jobs nationally); food and beverage order clerk (300 jobs in Indiana; 9,000 jobs nationally). The ALJ reduced the number of jobs available by 70% for the document preparer and order clerk jobs but not for the telephone information clerk jobs, which should have been reduced to 450 jobs in Indiana and 18,000 jobs nationally.

The number of jobs in Indiana with the 70% reduction is 1,050, and 1,000 jobs is a significant number of jobs, *Weatherbee v. Astrue,* 649 F.3d 565, 572 (7th Cir.2011) (citing *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009)), so remand is not required on this basis.

Plaintiff asserts that the VE testified that, in addition to the 70% drop in available jobs, the use of the mobile oxygen tank would require accommodation by employers and the VE did not testify whether there would be any jobs available for which use of the oxygen tank would not be considered accommodated work. Plaintiff's argument is unavailing. The VE testified as to the number of jobs available if an oxygen tank is not needed and that the number would drop by 70% if an oxygen tank is needed. The VE did not mention workplace accommodation or indicate that the remaining 30% of the jobs were available only as accommodated work. There is no error here.

### E. Request for Award of Benefits

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415

(7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required for the ALJ to properly consider Plaintiff's RFC.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 17], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 26th day of January, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT